## Ex parte ROBERT E. HOLLIWAY, Petitioner.

Division Two, October 8, 1917.

1. **CONTEMPT: Sufficiency of Judgment.** A judgment which sets forth facts conveying definite information of the precise subject-matter under inquiry by the grand jury at the time contemnor refused to answer, is sufficiently certain as to such subject.

2. ———: **Revealing Secrets of Grand Jury.** Inquiry by the grand jury of a witness as to the source of information he caused to be published in a newspaper, that a certain person had been indicted, who had not been arrested, is a legitimate and proper subject of inquiry by the grand jury.

3. ———: ———: **Reasons for Statute.** The purpose of the statute in requiring the secrets of the grand jury to be kept inviolate and in forbidding a disclosure of the fact that an indictment has been found against a person not in actual confinement or under bail, is to prevent the escape of such person; but the fact that the statute forbids such revelations, is of itself sufficient reason, whether the offense charged be great or small.

4. ———: ———: **Excuse: To Accommodate Newspaper Reporter.** He who violates the command of the statutes forbidding a revelation of the fact that the grand jury has found an indictment against an accused who has not been arrested or bailed, cannot justify his conduct by the fact that the person to whom under the cover of confidential friendship he gave the information was the reporter of a newspaper who desired to "scoop" his competitor in the business of obtaining and printing so-called news.

5. ————: **Refusing to Testify Before Grand Jury: Constitutional Immunity.** The constitutional provision against self-incrimination will not protect a witness before the grand jury in refusing to tell whether the information he published in his newspaper, that a certain person had been indicted, was obtained from a member of the grand jury or an officer of the court or a witness who had been before them. If any of those persons made a revelation of the information he was guilty of a misdemeanor, but a reporter who listened to the disclosure, or wrote it down, or reported it, was guilty of no offense, and cannot excuse himself from telling the grand jury which one of them gave him the information, on the ground that his answer would tend to incriminate himself—though an answer to an inquiry as to "where he got his information" might do so, but that is not decided, because he did not give his "constitutional rights" as his reason for refusal to answer that question.

6. ————: **Term of Commitment: Error Corrected on Habeas Corpus.** The judgment and commitment fixing the punishment of a contemnor, who has been properly adjudged guilty of contemptuously and contumaciously refusing to answer proper questions propounded to him by the grand jury, at imprisonment "until the further order of this court, or until he be otherwise legally discharged by due process of law," is manifestly erroneous, since the statute fixes the duration of punishment till contemnor gives the evidence which he had previously contemptuously refused to give; but he is not on that account entitled, on Habeas Corpus, to his unconditional discharge, but the contempt being criminal, as contradistinguished from civil contempt, the court, under the provisions of the statute (Sec. 5316, R. S. 1909), will assess the proper punishment.

## Habeas Corpus.

Writ denied.

*A. T. Dumm* for petitioner.

*Frank W. McAllister*, Attorney-General, for respondent.

FARIS, J.—This is an original proceeding under the Habeas Corpus Act, whereby petitioner, held in custody of one Anton B. Richter, as sheriff and ex-officio jailer of Cole County, under a commitment for an alleged contempt of court, for that, as it is charged, petitioner refused to

answer certain questions propounded to him by the grand jury of said Cole County, now seeks his discharge.

Upon the issuance of our writ, the sheriff made return setting out in full the judgment and the order of commitment in virtue of which the sheriff justifies his action in detaining petitioner. Upon this return petitioner, urging its insufficiency as a matter of law, moves for judgment upon the pleadings. Since all matters necessary to an understanding of both the law and the facts of the case are set forth in the judgment of the trial court, we copy this judgment below, omitting merely formal parts, thus:

"Now at this day comes into court the grand jury heretofore empanneled, to-wit: George W. Shell, Foreman; T. G. Nilges, Kearney Collett, Robert Glover, Julius H. Conrath, Wm. Turbit, Ed. Allen, Joe Ortmeyer, A. J. Musick, A. J. Moerschel, Geo. McFadden, and Paul Brace, accompanied by Robert E. Holliway, a witness duly subpoenaed before said grand jury, and reports to the court in writing that they have under consideration the question as to whether any member of the grand jury or any witness who has testified before the grand jury has violated their oaths by divulging and making known what the grand jury has had under consideration, or facts that have come to their knowledge which before the grand jury as a witness, and that the said Robert E. Holliway was duly summoned as a witness, and appeared before said grand jury and was duly sworn as a witness before said grand jury, as required by the statutes of this State, and that inquiry was made of him as to the source of the information he received appearing in the St. Louis Republic in its issues of Wednesday, September 19th, and Thursday, September 20, 1917, entitled "7 True Bills are Voted in Coal Inquiry," and purporting to have been sent to the said newspaper by said Robert E. Holliway, and that they have propounded to the said Robert E. Holliway, the following questions, all of which he had refused to answer.

"That the questions propounded and the answer of the said Robert E. Holliway thereto, were as follows:

"Q. Where did you get your information? A. I can't tell you.

"Q. Did any member of the grand jury give you this information? A. I can't tell you.

"Q. Who told you seven indictments had been returned against Jno. W. Scott for grand larceny and embezzlement? A. I can't answer.

"Q. Why can't you answer? A. Standing on my constitutional rights.

"Q. I understand you to say that you refuse to answer those questions. A. You can place your own interpretation on that.

"Q. Did any man in this room tell you that seven indictments had been returned against Jno. W. Scott? A. Can't tell you.

"Q. Do you refuse to tell? A. You can place your own interpretation on that; I can't tell.

"And thereupon, the court, in the presence of the grand jury, and the said witness, Robert E. Holliway, did determine that the said witness was bound to answer the questions aforesaid, and both the grand jury and the said witness were immediately informed of the decision, and thereupon, the said grand jury with said witness retired, and afterward came into court with said witness, and informed the court that the said witness refused to answer said questions, and being interrogated by the court in regard thereto, the said witness informed the court that he would not answer said questions, in the presence of said grand jury, and thereupon the court did order and adjudge that the said witness Robert E. Holliway was guilty of a contempt of this court, on account of his refusal to testify, as aforesaid, and does adjudge that he the said Robert E. Holliway be committed to the jail of Cole County, Missouri, for such contempt, as provided by Section 5082, of the Revised Statutes of Missouri of 1909 and it is further ordered and adjudged by the court that the clerk of this court immediately issue and deliver a proper commitment under this order and judgment, directed to the Sheriff of Cole County, Missouri, who is also the jailer thereof, commanding and requiring him

to commit the said Robert E. Holliway to the jail of the county aforesaid, and him there safely keep until the further order of this court, or until he be otherwise discharged by due process of law.''

I.   Three contentions are made by petitioner, all of which go to the alleged insufficiency of the judgment and the order of commitment, which follows Judgment. the judgment.   These are, to-wit, (a) that the article printed in the newspaper, headlines of which alone are set forth in the court's judgment, should have been copied in full therein; (b) that petitioner claimed his ''constitutional rights'' when interrogated by the grand jury, meaning thereby, counsel says, the privilege of refusing to answer the questions asked, because the answers thereto tended or might tend to incriminate him; (c) that under the law such refusal is justifiable, and (d) that the order of commitment is void, because it does not definitely fix the term for which · petitioner was committed to jail. These contentions we will look to in their order briefly.

A mere cursory glance at the order of commitment shows the fallacy of the first contention.   This order recites in pertinent phrase that the grand jury came into court and reported to the court in writing, ''that they have under consideration the question as to whether any member of the grand jury, or any witness who has testified before the grand jury, has violated their oaths by divulging what the grand jury has had under consideration, or facts that have come to their knowledge while before the grand jury as a witness.''   Continuing, the order in substance says that petitioner was duly summoned as a witness, that he appeared before the grand jury, was sworn as a witness, and inquiry made of him as to the source of the information whereon he based his statement that ''seven true bills are voted in coal inquiry,'' as set forth in an article printed in a certain designated newspaper, which article purported to have been written and sent· to ·said paper by the petitioner.   Then follows a true

copy of the questions asked petitioner, and which he refused to answer, all having reference, as the context plainly shows, to the source of petitioner's information whereon he bottomed the statement to his newspaper that seven true bills had been found by the grand jury. Obviously it is as plain as day that the facts are sufficiently tied together so as to obviate either lack of certainty, or inability to convey definite information touching the precise nature of the subject-matter under inquiry by the grand jury.

If it be among the contentions of petitioner's learned counsel, that, as a matter of law, the subject-matter of the inquiry was such as that no contempt could be commited in refusing to answer the interrogatories propounded, counsel is likewise in error. We <span style="font-variant:small-caps">Legitimate Inquiry by Grand Jury.</span> do not gather, however, that counsel goes so far in his contentions, but rather that he concedes this phase of this point, deeming it wise to hang this defense solely upon a bald technicality. But lest we err through misunderstanding counsel, we pause a moment to say that it is too plain for argument that the subject of the inquiry then before the grand jury was a legitimate one, and one about which the grand jury was not only permitted to inquire, but one about which it was its sworn duty to inquire. Not only do the individual component members of a grand jury take an oath that they will not divulge the secrets of the grand jury room (Sec. 5069, R. S. 1909), but the divulging of certain of these secrets is made a misdemeanor by statute. [Sec. 5088, R. S. 1909.] The above section thus provides:

"No grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them except when lawfully required to testify as a witness in relation thereto; nor shall he disclose the fact of any indictment having been found against any person for a felony, not in actual confinement, until the defendant shall have been arrested thereon. Any juror violating the provisions of this section shall be deemed guilty of a misdemeanor."

272 Mo.—8

By express statute this grand jury was privileged to indict, in fact it was its duty to indict, any individual member of its body, for any offense which the proof produced before the jury might show such juror to have committed. [Sec. 5083, R. S. 1909.] Another statute requires that every witness who appeared before the grand jury should be sworn not to divulge any matter which the jury might have under consideration, or about which the witness might be examined, or any matter which should come to the witness's knowledge while before the grand jury. [Sec. 5070, R. S. 1909.] A violation of the witness's oath in the behalf above, is made a misdemeanor. [Sec. 5071, R. S. 1909.] Other statutes make it a misdemeanor for any judge, prosecuting attorney, or other officer of any court to disclose the fact that an indictment has been found against any person, not in actual confinement, or under bail to answer such charge. [Sec. 5100, R. S. 1909.] The section last above is not pertinent here, because the class of persons therein mentioned was not under investigation, according to the language of the judgment, and order of commitment. We mention the latter statute in passing, as illustrative of the policy of the law to keep, and strenuously to enforce the keeping of the secrets of the grand jury room inviolate. Reasons for this policy are obvious and not far to seek, but reasons are not necessary when a statute though it may itself state specifically no reason, yet plainly forbids the divulging of these matters. Section 5099, Revised Statutes 1909, is a type of all of the sections of the sort confronting us. By its obvious terms it clearly foreshadows the reasons why divulging information as to the finding of an indictment, prior to the arrest of the accused, is forbidden, whenever such accused is not in actual confinement or under bail. This reason is to prevent the escape of the accused. It is manifestly no answer to this statute to say that in these cases the persons indicted, though not in custody, and though not under bail, would yet not attempt to escape, but would stay and undergo trial, and therefore that divulging the fact of indictment would do no

harm. The statute law, if it is not to be written in a thousand volumes, can possess' no such elasticity as to allow such an excuse as the above. In the very nature of things there must be but one rule as to all indictments for whatever crime or offense; however heinous, or the converse thereof, such an offense may be, and so the statute ordains. If the crime under investigation had been merely disturbing the peace, or obstructing a public highway, the rule is the same as for murder, or rape, or treason, though the reason for the rule might seem in the latter cases to be far more cogent. Nor does it change the rule or mitigate the offense, that he who violates any one of the above statutes, was under the guise of friendship induced to do so by someone desiring to "scoop" his competitor in the business of obtaining and printing so-called news. The cold commercial desire to print facts in advance of the time when public policy, or the public welfare permits the same to be made public, may be good business, but it is poor patriotism, and worse citizenship. It is at best a vicious sort of harmful intermeddling with the enforcement of the law, or the conservation of the public welfare.

Since then the clearly stated matters and things under investigation were proper matters of investigation, and matters which it was the duty of the grand jury to investigate, and since the questions asked were legal and proper ones, no reason exists in law, why petitioner should not have been compelled to answer them, or refusing to do so, why he should not be committed to jail, there to remain till he does see fit to do so. [Sec. 6372, R. S. 1909.] For the law does not tolerate the quixotic but strabismussed idea of refusing on so-called principle to violate the confidence of a law-breaker. Such a principle the law refuses to recognize for reasons of public policy, morals and welfare, which will instantly occur to the law-abiding citizen. It follows that this contention must be disallowed.

II. Passing the question that petitioner by what he said did in fact claim immunity from answering, because his answers would tend to incriminate him, we come to

the more important question here (which Self-incrimination. includes and disposes of the question of fact raised touching the verbal sufficiency of his claim), whether it was under the surrounding circumstances and the law possible for petitioner to claim immunity on this ground.

Of course such claim to immunity, when such immunity really exists, is always to be bottomed upon the guarantee of the Bill of Rights (Sec. 23, art, 2, Constitution of Missouri), which forbids that any ''person shall be compelled to testify against himself in a criminal cause,'' as this provision is interpreted by this court in the case of State v. Young, 119 Mo. 495, wherein it was held that the immunity conferred by the Constitution extended to other causes, places and courts, besides trials merely of criminal causes.

There has been much loose writing upon this question of immunity in this jurisdiction. But Judge GANTT, speaking for this Division, in the case of Ex parte Gauss, 223 Mo. l. c. 286, said:

''In our opinion, the petitioner having testified that he could not answer the questions without criminating himself, and it not being entirely plain that his answers might not lead to a prosecution of himself, we think the circuit court erred in committing him for contempt in refusing to answer.''

This rule will be sufficient for the purposes of this case. So we need not pause to inquire whether the tendency of some of the Missouri adjudged cases has not been toward a narrow and technical rule which would leave the witness the sole untrammeled judge of the incriminatory tendency of the questions propounded to him. Such a rule as the latter would put the entire enforcement of justice at the mercy of a wilful and recalcitrant witness, and might well block all prosecutions for crimes. But we need not quarrel with these far-flung cases here. The manifest converse of the negatively-phrased rule announced in the Gauss case is present here in the instant case, and it is ''*entirely plain*'' that the answers of petitioner to the

questions which were here asked him, and which he re-
fused to answer, could not tend in any degree to incrimi-
nate him, save and except the broad one as to "where he
got his information," and as to this one petitioner did
not properly save his "constitutional rights." It can be
seen that the answer to the broad question, as to where
petitioner got his information, that is, *how and from what
place he got it,* might under some circumstances tend to
incriminate the witness. For if he had obtained access
to the papers in the case by burglary, or by highway rob-
bery, or by the commission of some other crime, and upon
being questioned as to his source of information should
swear that his answers would criminate or tend to crimi-
nate him, it is obvious that the point would be well taken.
Ordinarily, however, the fact that the witness must make
his claim of immunity under oath prevents a resort to a
claim of such immunity as a mere subterfuge to escape
answering, except where the fact of incriminatory tend-
ency really exists. But few witnesses in a court charged
with law-enforcement follow the quixotic principle of
loyalty to the confidences of a law-breaker, so far as to
permit it to become a suborner of perjury.

The other questions asked petitioner went to the
identity of the person or persons who gave him the infor-
mation which he caused to be published. Under the sev-
eral statutes which we have quoted or made reference to,
the crime denounced is directed against the members of
the grand jury, certain officers of the court, and witnesses
who divulge outside of the jury room facts which have
come to their knowledge by reason of having been wit-
nesses before the grand jury. If a juror, or an officer of
the court, or a witness who has been before the grand jury
should have disclosed to petitioner prior to the arrest of
the persons indicted, the fact that indictments had been
found against such persons, the juror, officer, or witness
would be guilty of a misdemeanor, but petitioner as the
mere recipient of the disclosure would be guilty of no
offense, either for that he listened to the disclosure, or
that he repeated it, or wrote it down and caused it to be
published after he heard it. It follows that this contention
must likewise be disallowed.

III. Coming to the last point reserved for discussion, we meet a more troublesome question. By a reference to the closing language of the order of commitment, which followed substantially the judgment of contempt, which we quote in our statement, we find this language defining the term and period for which the imprisonment inflicted was to endure, to-wit: ''You, the said keeper of the said jail are hereby required to receive the said Robert E. Holliway, into your custody and him confine in the jail of said county *until the further order of this court, or until he be otherwise legally discharged by due process of law,* and for so doing this shall be your warrant.''

From the above excerpt it clearly appears that the term of imprisonment assessed by the circuit court is erroneous, for that it fixed the duration of petitioner's punishment ''until the further order of the corut, or till he be otherwise legally discharged by due process of law,'' instead of fixing the duration of such punishment till petitioner gives the evidence which he had before contemptuously refused to give, as provided by our statute, which fixes the punishment for contempts of this sort. [Sec. 6372, R. S. 1909.]

Learned counsel for petitioner strenuously contends that this error in fixing the punishment herein is fatal, and entitles petitioner to his unconditional discharge from custody. It is patent that such a contention has no merit, in either abstract justice, logic, or morals, and that if it is to be allowed at all, it must be excused as a far-fetched application of a most attenuated technicality, against which the Press of the State have long inveighed most piously. We think, however, that the Legislature has saved us from the necessity of absolutely discharging petitioner upon so bald a technicality, after his guilt has been demonstrated.

This is a criminal contempt, committed in the presence of the court, and bottomed on contumacious disregard of the court's authority and office, as contradistinguished from a civil contempt, which arises from the mere violation, ordinarily outside of the court's presence, of an order of court in a civil proceeding. Therefore, since it is a criminal contempt, no reason is seen why

the provisions of section 5316, Revised Statutes 1909, should not apply to the solution of the contention made. This section of our statute in pertinent substance reads thus:

"No person shall be discharged under the provisions of the Habeas Corpus Act . . . for the reason that the judgment by virtue of which such person is confined . . . was erroneous as to time or place of imprisonment, but in such case it shall be the duty of the court or officer hearing the case to sentence such person to the proper place of confinement, and for the correct length of time, from and after the date of the original sentence, and to cause the officer or other person having such prisoner in charge to convey him forthwith to such designated place of imprisonment."

We are constrained to hold that the statute which we quote above covers fully the situation presented by the facts in this case. If the circuit court of Cole County had had no jurisdiction of the contempt proceedings, or if it had exceeded its jurisdiction, or if it had done something in finding petitioner guilty which the law, or even the facts of the contempt charged did not warrant, then we could absolutely discharge petitioner in this proceeding. [Ex parte Creasy, 243 Mo. 679.] For then the action of the trial court being void, the judgment which it gave would be subject to collateral attack. [2 Freeman on Judgments, sec. 619; Hurd on Habeas Corpus, 327.] But the court had jurisdiction of petitioner's person and of the subject-matter, as well as jurisdiction to sentence petitioner to jail, and the court proceeded correctly, as we have seen above, in all things, except only as to the period fixed as the duration of petitioner's imprisonment. In this the learned trial court fell into error, seemingly by a mere loose selection of words. In such a situation we are not allowed to discharge the petitioner from custody, but both the statute quoted and the cases adjudged thereunder make it our duty to render the proper and lawful judgment in the case, and then to remand the petitioner, till he shall so far repent of his recalcitrancy as to answer the questions propound-

ed to him. [Sec. 5316, R. S. 1909; Ex parte Kenney, 105 Mo. 535; Ex parte Cohen, 159 Mo. 662; Ex parte Renshaw, 6 Mo. App. 474.] This is not only the rule in this State under our statute, but it is the modern and common sense rule in the great majority of other jurisdictions, some of which at least seem to have no statute on the subject. [Ex parte Cica,137 Pac. 598, 51 L. R. A. (N. S.) 373; In re Chase, 18 Idaho, 561; Martin v. District Ct., 37 Colo. 110; In re Richards, 150 Mich. 421; Ex parte Foster, 138 Pac. 849; In re Blystone, 75 Wash. 286; Harris v. Lang, 27 App. D. C. 84; Connella v. Haskell, 87 C. C. A. 111; De Bara v. United States, 40 C. C. A. 194; In re Taylor, 7 S. D. 382; In re Graham, 138 U. S. 461; In re Swan, 150 U. S. 637; State ex rel. v. Klock, 48 La. Ann. 67; Sennott's Case, 146 Mass. 489; Ex parte Burden, 92 Miss. 14; In re Fanton, 55 Neb. 703; Ex parte Mooney, 26 W. Va. 36; In re Graham, 74 Wis. 450; 12 R. C. L. 1208.]

Proceeding to perform our duty under the statute supra: It is ordered, considered, and adjudged that the petitioner, Robert E. Holliway, for his contempt of the circuit court of Cole County, in the State of Missouri, for that he contemptuously and contumaciously refused, and continues to refuse to answer certain legal and proper questions to him propounded by the grand jury, and whereof he has been in and by said Cole County Circuit Court heretofore lawfully tried and convicted, be and he is hereby sentenced to be imprisoned in the common jail of the county of Cole aforesaid, and in custody of Anton B. Richter, shariff and *ex-officio* jailer of said county, therein to be held, without bail, for and during such term and period as he the said Robert E. Holliway, shall so continue contumaciously to refuse to answer such questions (unless in the meantime said Cole County Circuit Court shall adjourn) and until he, the said Robert E. Holliway, shall give such evidence.

Let the writ be denied and the petitioner remanded to the custody of respondent Anton B. Richter, as sheriff and *ex-officio* jailer of Cole County aforesaid, pursuant to the above judgment of this court. All concur.