**ROGERS v. UNITED STATES.**

**WERTHEIMER v. UNITED STATES.**

**BLAU v. UNITED STATES.**

**BARY v. UNITED STATES.**

**KLEINBORD v. UNITED STATES.**

Nos. 3768–3769–3770–3782–3783.

United States Court of Appeals
Tenth Circuit.

Jan. 5, 1950.

Rehearing Denied Jan. 28, 1950.

560

Samuel D. Menin, Denver, Colo., for appellants.

M. H. Goldschein, Special Assistant to the Attorney General of the United States (Max M. Bulkeley, United States Attorney, District of Colorado; Joseph N. Lilly, Assistant United States Attorney for the District of Colorado, Denver, Colo., on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

All the appellants were called as witnesses before a grand jury regularly convened

by the United States District Court for the District of Colorado. Certain questions were propounded to them which they refused to answer on the ground that their answers might tend to incriminate them. All claimed their privilege under the Fifth Amendment to the Constitution in refusing to answer such questions. Formal presentments were lodged against some in the District Court, and others were presented to the District Court informally by the grand jury. At the hearings before the court, they were directed to answer the questions but again refused to do so on the same ground. They were thereupon, in further proceedings before the court, adjudged guilty of contempt and sentenced to serve various terms of imprisonment. These appeals challenge the correctness of each of these judgments.

The proceedings before the trial court were in some manner irregular and leave must to be desired. In the case of some of the appellants, the records fail to reveal that formal presentments were filed. In the case of Nancy Wertheimer, H. M. Goldschein, Special United States Attorney in charge of the grand jury investigation, stated that the grand jury was "not interested in who they believe in or what their political philosophy is, they are interested in whether or not these particular witnesses hold an office in the Communist Party and whether or not they have in their possession any books or records which show a matter of interest to this grand jury, a matter under inquiry for a violation of a federal statute—not a theory, a belief, or a politicalism." During the proceedings against Irvin Blau, the court stated: "Now I don't know what matter the grand jury is investigating and concerning which this witness was called, but he can't set himself up and say a question would tend to incriminate himself just because he believes that himself." It would seem that it would be difficult for the court to determine whether the witness should be required to answer in the absence of any knowledge as to the general subject of the investigation before the grand jury. However, the presentments filed against the defendants Bary and Kleinbord state that the grand jury "undertook an inquiry concerning various employees of the United States Government who had allegedly made false statements in connection with their loyalty investigation, in violation of Section 80, [now 18 U.S.C.A., § 1001], and other criminal laws of the United States." With one exception, all of the questions which the witnesses refused to answer related to their membership in, connection with, or knowledge of activities of the Communist Party of Denver and Colorado. There is much in the record warranting the conclusion that the purpose of the investigation by Goldschein, the Government's Special Representative before the grand jury, was to unearth the activities of the Communist Party of Colorado, rather than to unearth violations of 18 U.S.C. § 80, as stated in the presentments. However, for the purpose of passing on the right of the witnesses in refusing to answer the questions upon which the judgments in contempt are based, the subject of investigation as stated in the presentment will be accepted as the object of the grand jury's investigation.

As pointed out in the authorities, the constitutional right of a witness not to incriminate himself by his own testimony comes into conflict with the right of the Government to adduce the testimony of every citizen in criminal prosecutions. It might be well at the outset to re-examine the pronouncements of the Supreme Court with regard to this question. The leading case is the early historical case of Burr v. United States, 25 Fed.Cas. page 38, No. 14,692e. There, the court said: "When two principles come in conflict with each other, the court must give them both a reasonable construction, so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen, and the principle by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded."

And, further in the opinion, the court said: "It would seem, then, that the court ought never to compel a witness to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the laws."

The court then lays down the rule to be that: "If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that conviction."

And, "In such a case the witness must himself judge what his answer will be; and if he say on oath that he cannot answer without accusing himself, he cannot be compelled to answer."

Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, adheres to the rule in the Burr case. The court again stated that: "Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself." And the court quoted with approval the pronouncement in the Burr case that: "If the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not."

Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819, is in line with the preceding pronouncements by the Supreme Court. It, however, points to the danger of extending the principle announced in the Counselman case, and points out that the privilege must not be put forward for a sentimental reason, or for a purely fanciful protection of the witness against an imaginary danger, or for the real purpose of securing immunity to some third person.

The question was again before the Supreme Court in Ballmann v. Fagin, 200 U.S. 186, 26 S.Ct. 212, 50 L.Ed. 433, in which the rules announced in these preceding cases is adhered to.

The contention is made that Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 622, 61 L.Ed. 1198, is a departure from the strict rule laid down in the Burr and Counselman cases. However, a careful reading of the Mason case does not support such a conclusion. Thus, the court states: "When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be." Again it is pointed out that a refusal to answer, based upon a mere possibility of danger, would be to convert a salutary protection into a means of abuse.

From an analysis of these cases, we conclude the rule to be that the witness is not the sole judge as to whether his answer will tend to incriminate him; that when the question arises, it is for the court to determine from all the facts whether the question is of such a nature as might reasonably be expected to incriminate the witness, depending upon the answer thereto. If there is reason to believe that the answer might tend to incriminate the witness, he cannot be compelled to answer; neither can he be required to state why the answer might tend to incriminate him, because that would in itself to some extent constitute giving testimony against himself. Furthermore, a witness may not be required to give an answer which furnishes a link in a chain which would enable the Government to obtain the facts showing his guilt of a crime. It is also clear, from all the cases, that a witness may not refuse to answer because his answer might tend to incriminate others.

### Number 3769

We consider first the appeal of Nancy Wertheimer because it presents questions not common to the other cases. The only question asked her was whether she held any official position in the Communist Party. The court apparently required her to answer on the ground that membership in the Communist Party is not a criminal offense. But according to the grand jury, that was not the subject of investigation. According to its presentment, it was investigating among other things, false statements by Government employees, in connection with loyalty investigations.

If Nancy Wertheimer had made a false oath or statement with respect to her membership in, or connection with the Communist Party, she would be guilty of an offense. It would thus seem that the question bore reasonable relationship to the crimes under investigation. Under these circumstances, she alone knew whether her answer would incriminate her and she was not required to answer nor was she required to furnish any fact in explanation of her refusal to answer, which would give the Government a lead in ascertaining whether she was an employee or had made an oath or statement. Assuming that she was or had been a Government employee and had made a false oath as to her connection with the Communist Party, all that was necessary to obtain was an answer to this one question. It would have been a simple matter then to check her answer against her application or affidavit and obtain a conviction as a result of her testimony before the grand jury. On the other hand, if she was not or had not been a Government employee, then her answer could not reasonably be expected to incriminate her. The Government's Special Representative before the grand jury, with all the investigating powers of the Government at his disposal, knew, or with reasonable diligence could have ascertained, whether she was or had been such an employee. Due regard to the two conflicting rights—one on the part of the citizen not to be compelled to give any testimony against himself, and the other on the part of the Government to require the testimony of the witness— would seem to require that the Government with all of its investigatory powers which it possesses should have established these preliminary matters before asking the one question which would incriminate her if she had been such an employee and had given a false answer. Goldschein's stock statement to the witness that she was not under investigation and that the grand jury was not proceeding against her, was not warranted. It was not for him to say what the scope of the grand jury's investigation was; neither was his statement a substitute for her constitutional protection.

We, accordingly, conclude that the appellant, Nancy Wertheimer, was justified in refusing to answer and that the court erred in requiring her to do so.

### Numbers 3768, 3770, 3782, 3783

The above numbered cases all present identical questions and may be considered together.

In Number 3768, Jane Rogers testified that she was treasurer of the Communist Party of Denver until January, 1948, at which time she turned over the books and records to another person. When asked to whom she delivered the books, she refused to answer. She first gave as the reason that she did not feel that she should subject a person or persons to the same thing she was going through. Later she based her refusal on the ground that it would tend to incriminate her.

In Number 3770, Irvin G. Blau was asked the whereabouts of his wife, Patricia Blau, and whether or not she held any official connection with the Communist Party. He was also asked, and refused to answer, whether he had collected dues from the members of the Communist Party or assisted in the calling of the membership of the Communist Party for a meeting of any kind. He based his refusal to give the address of his wife on the ground that it was a privileged communication, and his refusal to answer the other questions on the ground that it would tend to incriminate him. A perusal of his entire examination before the grand jury indicates that it was established by his testimony or his answers that he was a member of the Communist Party.

In Number 3782, Arthur Bary was asked whether he held any official position in the Communist Party, to which he replied, "I do." When asked what position he held, he said, "Chairman of the Communist Party of Colorado." He was asked how many clubs, cells or subdivisions of the Communist Party there were in Colorado; who were the officers of each particular club; the names and addresses of all members of each club, cell or subdivision. He was

asked to produce the books in which the dues paid by each member in each club were recorded, or if he did not have them, to state to the grand jury who had possession of these books. He refused to answer all these questions on the ground that they would tend to incriminate him.

In Number 3783, Paul Meir Kleinbord admitted to the grand jury that he was a member of the Party and became a Section worker for the Denver Section of the Communist Party of Colorado. He refused to answer questions propounded to him concerning the names of the members of the Communist Party of Colorado who were working under his direction as Membership Director of the Denver Section of the Party, who appointed him Membership Director, the number of and the names of the branches of the Denver Section of the Communist Party, the persons from whom he had collected dues in the Denver Section, the names of the committees on which he served in the Communist Party, the names and addresses of the officers of each particular club, and the names and addresses of all members of each particular club. He refused to answer these questions on the ground that they tended to incriminate him.

In Number 3769, we have held that within the scope of inquiry by the grand jury and in the posture of the case before the trial court on the presentment in contempt, Nancy Wertheimer was within her constitutional right in refusing to answer any question showing any connection with the Communist Party. But, as pointed out, in these cases each of the appellants voluntarily answered at least one question showing membership in, or a connection with, such Party before they refused to answer further on the ground that their answer might tend to incriminate themselves. By so doing, they waived the privilege that was theirs under the Constitution and were thereafter required to answer the remaining questions propounded to them.[1]

Appellant Blau was also asked the address and present whereabouts of his wife. He refused to answer on the ground that the answer called for a privileged communication between himself and his wife, which he was not required to give. It is not every communication between husband and wife that is privileged. The principle of privileged communications between husband and wife comes to us from the common law. It was adopted to encourage mutual confidence between the parties for the preservation of the marital status. There was thus ingrafted upon the common law the doctrine that all private and confidential communications between the parties are privileged and may not be divulged by either on the witness stand. In order, however, to make the communication privileged, it must be of a private and confidential nature, and must have come to one by virtue of the marital relation.[2] It is difficult to imagine anything less private or confidential than the address of a husband or wife. Furthermore, the record indicates that Blau knew where his wife was and there is nothing in the record indicating that this knowledge even came to him as a result of a communication, confidential or otherwise, from his wife. The witness was not warranted in refusing to answer this question.

Since each of the appellants in Numbers 3768, 3770, 3782, and 3783, without objection, answered at least one question showing their connection with the

---

1. In Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 647, 40 L.Ed. 819, the Supreme Court said:

"Thus, if the witness himself elects to waive his privilege, as he may doubtless do, since the privilege is for his protection, and not for that of other parties, and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure."

See, also, Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448; United States v. Johnson, D.C., 76 F.Supp. 538.

2. American Jurisprudence, Volume 58, Witnesses, Section 375, et seq.; Wolfle v. U. S., 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617; Fraser v. U. S., 6 Cir., 145 F.2d 139; New York Life Ins. Co. v. Ross, 6 Cir., 30 F.2d 80; In re Ford's Estate, 70 Utah 456, 261 P. 15.

Communist Party, they thereby waived their privilege under the Constitution and were thereafter required to answer the questions propounded to them upon which the judgments in contempt were based. So also, within the principles hereinabove discussed, they could not refuse to answer those questions propounded to them concerning third parties when it was clear that such questions could not incriminate themselves.

The judgment in Number 3769—Nancy Wertheimer v. United States, is reversed, and the judgments in Number 3768—Jane Rogers v. United States, Number 3770—Irvin G. Blau v. United States, Number 3782—Arthur Bary v. United States, and Number 3783—Paul Meir Kleinbord v. United States, are each severally affirmed.