STATE of Missouri ex rel. Franklin D. LEE, Relator,

v.

David T. CAVANAUGH, Judge of the Circuit Court of Jackson County, Missouri, Respondent.

No. 24491.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Eugene P. Wilhelmsen, Blackford & Wilhelmsen, Kansas City, for relator.

Piedimonte & Cochran, William A. Piedimonte, Thomas D. Cochran, C. William Kramer, Independence, for respondent.

HOWARD, Presiding Judge.

This is an original proceeding in prohibition. The questions presented arise out of the examination of Mr. Lee as a judgment debtor, pursuant to statute. Mr. Lee, as a witness, was very evasive and claimed not to remember many things which the ordinary person would remember. The facts surrounding Mr. Lee are not at all clear from this record, but we believe that the record does show that Mr. Lee made his living by lecturing or talking to various people and groups on the subject of "celestial law"—"the law of the eternal". Some of the people to whom he spoke made gifts of money, food and produce. Lee was unable to remember the names of any of the people who had made gifts to him, with one or two exceptions. He refused to answer whether or not he had filed federal or state income tax returns for the years 1963 and 1964 on the grounds that the answer might incriminate him. Further in the examination it appeared that he had recently purchased a 1960 or 1962 Rambler automobile in Bay City, Michigan, and that three people had loaned him the money to buy the car. He was then asked the names of the people who had loaned him the money. He refused to answer this question on the ground that it might incriminate him. When asked by the court how it might incriminate him, he answered "because they might think I had money". The ultimate result was that the court held Mr. Lee in contempt. On request of counsel, the court delayed the issuance of the commitment until application could be made to this court for prohibition. Such application was made and our preliminary writ duly issued.

We set forth the proceedings leading up to the finding of contempt as follows:

"Q To whom are you going to make the payments on the car? A The people that loaned the money.

Q Do you know for sure who that was? A No, I don't; there is three of them.

Q Three people? A Three different people. They wired the money to me.

Q Who are they? A I refuse to answer on the grounds that it might incriminate me.

THE COURT: Mr. North, are you going to pursue the question further?

MR. NORTH: Yes, Sir.

THE COURT: Proceed.

Q Who were the people that gave you the money to purchase this Rambler? A I said I refused to answer that; it might incriminate me.

Q You refuse to answer? A Yes.

MR. NORTH: I ask the Court to instruct the witness to answer the question.

THE COURT: How do you feel that this would incriminate you, Mr. Lee; in what way?

THE WITNESS: Because they might think I had money.

THE COURT: It isn't against the law to have money.

THE WITNESS: I don't have any.

THE COURT: The point is, it is not against the law to have money; there is nothing criminal about having money.

THE WITNESS: But I don't have any money.

THE COURT: Well, the point is you received money from three people to buy a car. Now, this lawyer is entitled to know the names of those people under the proceeding that is now before this Court, and there is nothing that would incriminate you to reveal the names of those witnesses, those people that gave you this money. The Court is instructing you to answer those questions.

THE WITNESS: I refuse to answer, that it might incriminate me.

THE COURT: You understand you are attempting to make a farce out of this court and I don't appreciate it. You have been advised by counsel here that unless you answer these questions you are subjecting yourself, putting yourself in contempt of this Court, and I have the right to confine you in jail until you purge yourself of that contempt. Have you been so advised?

THE WITNESS: I talked to my attorney about it; Yes, sir. I am answering, Your Honor, as to the best of my ability.

THE COURT: You are telling this Court that three people gave you money to buy a car, and you say to have money would incriminate you. Now, how do you say that?

THE WITNESS: I don't have money, Your Honor.

THE COURT: They gave you money to buy the car?

THE WITNESS: They loaned me the money on the car.

THE COURT: He wants to know the names of those three people.

THE WITNESS: I couldn't give it to him.

THE COURT: Why can't you give it to him?

THE WITNESS: Because—

THE COURT (interrupting) Because what?

THE WITNESS: I don't know one of them.

THE COURT: You don't know the people that gave you money to buy the car?

THE WITNESS: No.

THE COURT: The Court doesn't believe that testimony and you are attempting to make a farce out of the proceedings of this court. You know who those people are.

THE WITNESS: Please, I don't know one of them.

MR. WILHELMSEN: Do you know the names?

THE WITNESS: I talked to them and they said, "Don't mention it".

THE COURT: I am not interested in what they said. You know their names and you have been instructed by this

Court to answer this question and to give those names.

THE WITNESS: I know one name. The people that wired the money or mailed the check—I guess it was a check—to me, is all.

THE COURT: You state the names. What are the names of those people? I am speaking to you, Mr. Lee, and asking you to answer the question and if you don't answer it I am going to find you in contempt of Court and I am going to put you in jail.

THE WITNESS: That, Your Honor, I cannot help.

THE COURT: Are you refusing to answer that question?

MR. WILHELMSEN: May I counsel with the witness?

THE COURT: Yes, you may.

(Whereupon, counsel and witness conferred without the hearing of the Court.)

THE COURT: The Court has instructed you, Mr. Lee, to answer the question and give the names of these people, and you say that you refuse to do it because it might incriminate you, and you state that the only reason it might incriminate you would be that you had money. The Court has determined that it is not against the law and it is no criminal offense to have money. Now, you are instructed to answer that question, and unless you do answer it I am going to find you in contempt of Court and I am going to order you committed to jail until you purge yourself of this contempt. Now, do you still refuse to answer the question?

THE WITNESS: What was the question?

THE COURT: Mr. Harder, read the last question, please.

(Whereupon, the last question was read by the reporter as follows: "Who were the people that gave you the money to purchase this Rambler?")

THE WITNESS: I refuse to answer because it might incriminate me.

THE COURT: On what grounds would it incriminate you?

THE WITNESS: Criminally.

THE COURT: In what way?

THE WITNESS: I refuse to answer that because it might incriminate me.

THE COURT: Well, the Court has determined that it would not incriminate you, and you are ordered to answer the question, and if you refuse to answer it I am going to commit you to jail. Do you refuse to answer the question?

THE WITNESS: Well, Your Honor, you have the right of all things.

THE COURT: The question the Court has put to you is, Do you refuse to answer the question?

THE WITNESS: I couldn't answer it.

THE COURT: The Court finds you in contempt and is going to order you committed to jail for contempt, and until you purge yourself of contempt you will remain in jail."

■ It is now well settled that the privilege against self incrimination as it appears in both the federal and state constitutions is applicable to the examination of judgment debtors under our statutes, and that such judgment debtors when being so examined are privileged to refuse to answer questions which might incriminate them. See State ex rel. North v. Kirtley, Mo., 327 S.W.2d 166; State ex rel. Strodtman v. Haid, 325 Mo. 1137, 30 S.W.2d 466; Ex parte Meyer, Mo.App., 18 S.W.2d 560.

■ The question here presented is whether or not, on the record as heretofore set out, the relator Lee had a right to refuse to answer the question as to the names of the people who loaned him the money to buy the automobile. Such answer would

appear on the face of these proceedings to be harmless and one which would not tend to incriminate. However, the privilege is not limited to questions which would require an answer completely revealing guilt of a crime. On the contrary, the privilege extends to questions whose answers might disclose facts which could form a link in a chain of evidence, which would result in convicting the witness of a crime. See State ex rel. North v. Kirtley, Mo., 327 S.W.2d 166; State ex rel. Strodtman v. Haid, 325 Mo. 1137, 30 S.W.2d 466; Ex parte Meyer, Mo.App., 18 S.W.2d 560; Smith v. United States, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264. The scope of the privilege was well set out by this court in Presta v. Owsley, Mo.App., 345 S.W.2d 649, where the court in discussing its evidence said, 1.c. 652:

"The problem presented is not new. It has several times been considered and ruled by the Supreme Court of the United States, by various federal courts and by the appellate courts of this state and other states.[2] In the Burr case,

2. See, Ex parte Arvin, 232 Mo.App. 796, 112 S.W.2d 113; Ex parte Gauss, 223 Mo. 277, 122 S.W. 741; United States v. Burr, 25 Fed.Cas. page 38, No. 14,692e, 1 Burr's Trial 244; Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; State v. Young, 119 Mo. 495, 24 S.W. 1038; State ex rel. Attorney General v. Simmons Hardware Co., 109 Mo. 118, 18 S.W. 1125, 15 L.R.A. 676; Ex parte Carter, 166 Mo. 604, 66 S.W. 540, 57 L.R.A. 654; Ex parte January, 295 Mo. 653, 246 S.W. 241.

decided in 1806, 25 Fed.Cas. pages 38, 40, No. 14,692e generally followed by the courts, Chief Justice Marshall said: '* * * if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other

testimony of the fact. * * * It is certainly not only a possible but a probable case that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the laws.'

"In Ex parte Gauss, 223 Mo. 277, 122 S.W. 741, 742, the Supreme Court of this state approved the doctrine announced by Chief Justice Marshall in the Burr case, and held that such rule was entirely consistent with the doctrine generally held that when the court can say as a matter of law that it is impossible that the witness would incriminate himself by answering a question one way or the other, then the court can require an answer; but not otherwise. The court quoted with approval the following language from People v. Mather, 4 Wend., N.Y. 229, loc. cit. 252, 21 Am. Dec. 122: 'The witness knows what the court does not know, and what he cannot communicate without being a self-accuser, and is the judge of the effect of his answer, and if it proves a link in the chain of testimony, which is sufficient to convict him, he is protected by law from answering the question. If there be a series of questions, the answer to

all of which would establish his criminality, the party cannot pick out a particular one, and say, if that be put, the answer will not criminate him. If it is one step having a tendency to criminate him, he is not compelled to answer.'"

Even though the answer to the question would appear to be innocent on the face of the record, it might still, in fact, reveal matters which could lead to the conviction of the defendant, and if this is so the witness may claim the privilege. In the instant case relator argues that if he were to reveal the names of the people who loaned him the money with which he purchased the car, it might form a link in a chain of evidence which could result in his conviction of income tax violation, and which might show association with those who are guilty of crimes and such association might lead to evidence implicating the witness in their crimes.

Relator further argues that the giving of the names required by the question might lead to evidence showing that the money the witness received was known by him to be stolen, or that the loan might be a sham and it might constitute earned money which would subject him to income tax prosecution. On this basis it would appear that the relator was justified in claiming the privilege. It also occurs to the writer that the answer might form a link in a chain of evidence sufficient to convict relator of a crime involving fraud in procuring the loan.

■ This court in Ex parte Arvin, 232 Mo.App. 796, 112 S.W.2d 113, pointed out that unless the court can find as a matter of law that the answer to the question would not tend to incriminate the witness, such answer can not be compelled. In other words, the witness can successfully claim his privilege against self incrimination unless and until the court can say, as a matter of law, that the answer could not possibly reveal facts which might form a link in a chain of evidence leading to the conviction of the witness for a crime. See Ex parte

Holliway, 272 Mo. 108, 199 S.W. 412; Presta v. Owsley, Mo.App., 345 S.W.2d 649; Rogers v. United States, C.A. 10, 179 F.2d 559; Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344; United States v. Coffey, C.A. 3, 198 F.2d 438.

In the present case it is apparent that the court determined as a matter of law that the answer would not incriminate relator. This was apparently based on the following question and answer. "THE COURT: How do you feel that this would incriminate you, Mr. Lee; in what way? THE WITNESS: Because they might think I had money."

■ The Court then pointed out that the mere possession of money was not a crime and insisted that the answer of the question could not, as a matter of law, incriminate relator. We must remember that this occured after relator had specifically refused to answer the question on the ground that it might incriminate him. The cases heretofore cited point out that the privilege extends not only to refusing to answer the question asked, but to refusing to explain how the answer might incriminate the witness.

We believe that the trial court's interpretation of the witness's claim to privilege was too narrow. In Rogers v. United States, 10 Cir., 179 F.2d 559, the court expressed the test as follows, 1. c. 562: "From an analysis of these cases, we conclude the rule to be that the witness is not the sole judge as to whether his answer will tend to incriminate him; that when the question arises, it is for the court to determine from all the facts whether the question is of such a nature as might reasonably be expected to incriminate the witness, depending upon the answer thereto. If there is reason to believe that the answer might tend to incriminate the witness, he cannot be compelled to answer; neither can he be required to state why the answer might tend to incriminate him, because that would in itself to some extent constitute giving testimony against himself. Further-

more, a witness may not be required to give an answer which furnishes a link in a chain which would enable the Government to obtain the facts showing his guilt of a crime. It is also clear, from all the cases, that a witness may not refuse to answer because his answer might tend to incriminate others." Then concerning some of the several cases being considered, the court said: "Under these circumstances she [the witness] alone know whether her answer would incriminate her and she was not required to answer nor was she required to furnish any fact in explanation of her refusal to answer, which would give the Government a lead * * *" in determining whether or not she was guilty of a crime.

 We do not believe, taken in context, the statement of relator that the answer to this question might incriminate him "because they might think I had money" expressed the complete scope of the danger of incrimination. In limiting its subsequent determination of contempt to this one aspect of the testimony, we believe that the trial court erred. As heretofore mentioned, there are many other ways which readily appear in which the answer might tend to incriminate relator. Further, if in fact the money was stolen, the mere fact of having the money might tend to incriminate the witness, and in such a situation, obviously the names of the people from whom he received such stolen money might be within the privilege as forming a link in a chain of evidence which would convict relator. While it is admitted that the witness cannot claim the privilege when there is no rational basis upon which it could conceivably tend to incriminate him, if such rational basis is shown, then the court cannot find, as a matter of law, that the answer will not incriminate the witness, and the witness can then claim his privilege and cannot be compelled to testify.

This matter was carefully considered by Judge Hastie for the Third Circuit Court of Appeals in United States v. Coffey, 198 F.2d 438, quoted with approval in Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, note 18, page 692, 99 L.Ed. 997. Judge Hastie said: "Specifically, we think the problem is what to do about apparently innocuous questions, the answers to which are admittedly not incriminating in themselves, when there are no additional facts before the Court which suggest particular connecting links through which the answer might lead to and might result in incrimination of the witness. We think the Supreme Court is saying that such facts are not necessary to the sustaining of the privilege. The decision in the Mason case would not be followed today. It is enough (1) that the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime against the United States, and (2) that this suggested course and scheme of linkage not seem incredible in the circumstances of the particular case. It is in this latter connection, the credibility of the suggested connecting chain, that the reputation and known history of the witness may be significant.

"Finally, in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry."

 Admittedly the witness must claim his constitutional right against incrimination before he is entitled thereto, and once he has admitted facts which tend to completely incriminate him, he cannot thereafter claim the privilege against the details. Likewise, where the witness refuses to answer the broad incriminating question on grounds other than his constitutional privilege against self incrimination, he cannot thereafter claim the constitutional privilege against self incrimination as to details. See Ex parte Holliway, 272 Mo. 108, 199 S.W.

412; Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344. While these two cases and others like them often speak of waiver of the privilege, the decisions appear to be, in fact, grounded on the doctrine that once the witness has admitted the whole of an incriminating situation, testimony as to the details cannot further incriminate the witness, and thus the court can say, as a matter of law, as to such detail questions, that the answer cannot further incriminate the witness, or as the Supreme Court said in Rogers v. United States, supra, the answer to the detailed questions do not add "any real danger" of further incrimination of the witness.

Respondent has relied upon the holding in Ex parte Holliway, supra, to say that the court in this instance could determine as a matter of law that the answer to the question could not incriminate relator. Respondent's argument goes to the effect that: relator has admitted that he received the money with which to buy the car; he says that the answer to the question might incriminate him "because they might think I have money" and he has already admitted having the money with which he purchased the car; therefore the names of the people who loaned him the money constitute mere details and relator cannot claim the privilege to such details, because by answer to the broad general question of having money, he has completely incriminated himself and has therefore waived the privilege as to the details, or, as more properly stated, the court in such circumstances could and did properly hold, as a matter of law, that the answer would not incriminate him. What we have heretofore said about the possible incriminating aspects of relator's answer disposes of this argument.

Respondent contends that by his conduct relator waived the privilege against self incrimination. After having completely and properly claimed the privilege, relator then stated that the answer might incriminate him "because they might think I had money". He then stated that he could not give the names of the three people who loaned him the money with which to buy the car because (1) "I don't know one of them," and (2) "I talked to them and they said 'don't mention it.'" Relator then said, "I know one name". He later declared, "I could not answer it". Such equivocation is no doubt exasperating and frustrating, both to the court and counsel. However, after the witness has properly invoked the protection of his constitutional privilege against self incrimination, a waiver of such privilege will not be held to have occurred upon vague and uncertain evidence. Smith v. United States, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264. In Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997, it was held that the court would indulge every reasonable presumption against waiver and that a waiver would not be declared unless it clearly appeared that the witness intended to and did knowingly waive his rights.

Although relator has not seen fit to answer respondent's argument as to waiver, we hold on the basis of the foregoing authority that the uncertain and ambiguous statements of relator were not sufficient to waive the privilege which he had theretofore unequivocally claimed.

Respondent also contends that relator was an evasive, recalcitrant and vexing witness, who from the outset tried the patience of the court, and that the contempt citation was in process of growth from early in the proceeding "and was not predicated solely" upon relator's refusal to answer the question as to the names of the three people who loaned him the money to buy the car. Undoubtedly, a witness, who by vagueness and refusal to remember is obviously attempting to prevent any real inquiry, can, as a consequence of such conduct, be adjudged guilty of contempt. This was set out by Judge Learned Hand more than fifty years ago in his opinion as a district judge in United States v. Appel, D.C.,

211 F. 495, cited with approval by the United States Supreme Court in Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589. Judge Hand said: "The rule, I think, ought to be this: If the witness' conduct shows beyond any doubt whatever that he is refusing to tell what he knows, he is in contempt of court. That conduct is, of course, beyond question when he flatly refuses to answer, but it may appear in other ways. A court, like anyone else who is in earnest, ought not to be put off by transparent sham, and the mere fact that the witness gives some answer cannot be an absolute test. For instance, it could not be enough for a witness to say that he did not remember where he had slept the night before, if he was sane and sober, or that he could not tell whether he had been married more than a week. If a court is to have any power at all to compel an answer, it must surely have power to compel an answer which is not given to fob off inquiry. Nevertheless, this power must not be used to punish perjury, and the only proper test is whether on its mere face, and without inquiry collaterally, the testimony is not a bona fide effort to answer the questions at all."

We agree with Judge Hand and while, possibly, the trial court might have held relator in contempt for his generally recalcitrant conduct, it did not attempt to do so. It is apparent from the record that the citation for contempt was not based upon this broad general ground, but on the narrow ground of relator's refusing to answer the question calling for the names of the three persons who loaned him the money with which to buy the car.

For the reasons heretofore set out we conclude that relator validly claimed his constitutional privilege against self incrimination and cannot legally be required to answer this question. Further, we hold that relator did not waive the privilege.

Therefore, our preliminary writ in prohibition is hereby made absolute.

All concur.