STATE of Missouri, Respondent,

v.

Mitchell WILKINSON, Appellant.

No. 61366.

Supreme Court of Missouri,
En Banc.

Oct. 15, 1980.

Thomas A. Ludwig and Albert C. Lowes, Jackson, for appellant.

John Ashcroft, Atty. Gen., Lisa M. Camel, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Convicted of aiding and encouraging the crimes of rape (§ 559.260, RSMo Supp.1975) and burglary (§ 560.040, RSMo 1969), defendant was sentenced to concurrent terms of ten and five years on the respective charges. His challenge to the validity of § 491.015, RSMo Supp.1977, popularly known as the Missouri Rape Shield Law, brings the case here on appeal under Art. V, § 3, Mo.Const. However, the cause is reversed and remanded for reasons other than the constitutional contention.

Defendant's numerous assignments of error include: (1) insufficiency of the evidence on aiding and encouraging burglary and rape; (2) a multi–pronged attack on the validity of § 491.015, contending it is violative of the Sixth and Fourteenth

Amendments to the United States Constitution and Art. I, § 18a and § 10 and Art. III, § 40 of the Missouri Constitution; (3) that the trial court erred in (a) applying the invalid section, (b) admitting statements elicited from defendant in violation of the Fifth Amendment to the United States Constitution, § 544.170, RSMo 1969, and Rule 21.14, (c) failing to disqualify the prosecutor, (d) admitting hearsay evidence, (e) refusing requested instruction on circumstantial evidence, and (f) erroneously proscribing defense counsel's argument as to the insufficiency of the evidence.

The record reveals that what might have remained scurrilous talk between three young men, became a plan to attack a female victim, Marcella Green, carried to fruition by one of the three. According to defendant's testimony, during the late evening of November 26, 1978, he encountered Gene Ward and Bobby Collier outside a restaurant in Lutesville. He had known Ward for several years and had been acquainted with Collier for about three weeks. As the three were "riding around" in defendant's car discussing girls and beer, Collier stated he wanted a "date," and Wilkinson volunteered he knew a girl, naming the prosecutrix, whom Collier could date at anytime.[1] Defendant also told Collier that he did not like the prosecutrix and that "he would like to see her raped." Collier replied that he would rape her.[2]

Two trips were made to the complaining witness' apartment during which Collier knocked on her door, inquiring if another girl was present. The trio then drove to "the Lanes," a place near Marble Hill frequented by local youths, and en route Wilkinson and Ward taunted Collier in the apparent belief he had not in fact knocked on the prosecutrix's door. Collier responded that he would return to the apartment

and drag the prosecutrix to the window. He maintained at trial that the three discussed a plan by which he would gain entry to the victim's apartment, show her at the window, then Wilkinson and Ward would come upstairs. According to defendant, he only suggested binding the prosecutrix to frighten her, but he admitted telling Collier he would supply an alibi asking if Collier had a mask to cover his face. Ward mentioned that Collier had access to a rope. Further discussion included covering the victim with a sheet and the suggestion that Collier wear gloves. Finally, Wilkinson stated he told Ward and Collier to remove their shoes at the victim's apartment building to avoid identifiable footprints in the mud. Wilkinson stated this discussion was in a jocular vein, yet he drove his car to Collier's hotel knowing Collier was going to his room for the mask, gloves and rope. When Collier returned to the car with those items they drove to the victim's apartment and parked about a block away instead of in front as on the two previous occasions.

Wilkinson admitted he mentioned $5.00 either as a bet or payment for frightening the victim. As they left the car Collier put on the mask and gloves and placed the rope in his pocket. Collier claimed Wilkinson asked if he had a knife and suggested it be used to threaten the victim and cut her telephone lines. Wilkinson disclaimed any knowledge of Collier's possession of the knife used in the attack.

The three then walked to a point where the victim's window was clearly visible. Defendant stated he and Ward moved to that location so Collier would believe they were acting in accordance with their plan. Collier asked Wilkinson how he could gain entry and Wilkinson advised that he should imitate the voice of the victim's former

---

1. Defendant once lived with the prosecutrix and her husband and the prosecutrix had at another time lived with defendant and his wife. Hard feelings developed between Wilkinson and the prosecutrix after an incident when she was slapped by Wilkinson's wife. Apparently Collier was also known to the prosecutrix at least by sight as he had visited her apartment on one occasion.

2. Collier testified that defendant began discussing means of entering the victim's apartment immediately after the rape comment. Defendant admitted the off-hand statement about raping the prosecutrix but testified there was no further discussion until some three or four hours later at the bowling lanes.

husband and demonstrated the sound of his voice. Wilkinson also stated he told Collier not to hurt the victim but Collier's version was that Wilkinson cautioned him to leave no marks on the victim that might be evidence of the attack. Collier entered the rear of the building and broke in the door to the prosecutrix's apartment. Shortly thereafter defendant and Ward saw a light come on in the apartment and heard three screams. Collier testified that after he forced his way into the apartment, he displayed her at the window in accordance with the formulated plan and then raped her. Wilkinson and Ward ran back to the car, drove around the block and thence to Wilkinson's house. About one–half hour later Collier arrived at the Wilkinson home and related the details of the crime. Wilkinson testified that when Collier told of these events, Ward and he laughed in disbelief and gave Collier $5.00 as a loan "to help fix" his truck. Collier's version was that after he related the details, Wilkinson laughed and said he couldn't wait to see the victim so he could laugh at her.

I

The first contention we address is whether a submissible case was made that defendant aided and encouraged the burglary and rape. Viewing the evidence in the light most favorable to the State, affording the verdict the benefit of all reasonable inferences and disregarding contrary evidence, *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977), we reject defendant's claim of error. In cases such as this, there must be proof "that the accused 'associate himself with the venture' in some fashion; that some form of affirmative participation be shown; participation in the crime as something that he wished to bring about; that he sought by his action to make it succeed; that he 'consciously shared' in the criminal act." *State v. Irby*, 423 S.W.2d 800, 803 (Mo.1968) (citations omitted). Accord, *State v. Bush*, 547 S.W.2d 517 (Mo.App.1977).

The record is replete with testimony from which a jury could find that defendant affirmatively aided and encouraged Collier with the specific intent of producing the resulting burglary and rape. Defendant admitted at trial he told Collier he would like to see the victim raped. Such statement provided sufficient evidentiary basis for the jury to find defendant intentionally aided and encouraged the felony. See *State v. Grebe*, 461 S.W.2d 265, 268 (Mo. banc 1970). Moreover, the jury could reasonably find defendant's affirmative participation in the burglary from his transportation of Collier to the hotel room, where Collier procured the mask, gloves and rope used in the rape, and then to the victim's apartment. Wilkinson also admitted he told Collier he would wait for him and he advised Collier how to gain entry to the apartment. Defendant makes much of Collier's statement at trial that at the time of his entry into the apartment he did not intend to rape the victim. Hence, without intent to commit rape, neither the rape nor burglary charge were proved. Collier's testimony is not without inconsistencies and given the evidence discussed above it was for the jury to resolve the conflict in testimony. It is not our function to reweigh the evidence or substitute our judgment for that of the jury when the verdict is supported by substantial evidence. *State v. Gregory*, 339 Mo. 133, 143–144, 96 S.W.2d 47, 53 (Mo.1936). We hold a submissible case was made.

II

Concerning the constitutional challenge to § 491.015, RSMo 1978, this issue is not reached as the case is reversed and remanded on other grounds and the constitutional issue is unnecessary to the decision. *City of St. Joseph v. Christgen*, 513 S.W.2d 458, 459 (Mo.1974); *United Air Lines, Inc. v. State Tax Commission*, 377 S.W.2d 444, 452 (Mo. banc 1964).[3]

---

3. While we do not state our views on the constitutional issue, we note the recent summary

action by the United States Supreme Court dismissing an appeal from a conviction involv-

## III

Bobby Collier, the State's principal witness, deposed by defendant during pretrial discovery, responded to questions concerning events occurring prior to entering the victim's apartment. When the inquiry reached that point, Collier refused to answer further questions invoking his Fifth Amendment right against self-incrimination. After an extended series of detailed questions concerning the alleged burglary and rape which the witness declined to answer, the depositions were terminated by his general statement that he would answer no questions as to matters occurring after he arrived at the victim's apartment. Defense counsel promptly filed his "motion to compel answers to deposition questions" asserting that the prosecution witness' refused to disclose matters material to defendant's guilt or innocence required an appropriate order under Rule 25.45 (now Rule 25.16) to facilitate discovery. The motion was denied without hearing on February 13, 1979, and, by the trial court's admission, without examination of the record and perusal of the questions to which Collier claimed the privilege. On March 3, defendant filed a pretrial motion to exclude Collier's testimony because "defendant was denied his right of discovery," and this motion too was denied, apparently in the belief that absent some involvement by the State in Collier's claim of privilege, an order to compel Collier to answer or exclude Collier's testimony at trial would be improper. At trial, defense counsel's renewed motion to exclude Collier's testimony when he was called by the State was denied. Preserving the point, defendant again objected without success when Collier testified freely on direct examination to matters upon which he claimed the privilege during deposition.

Defendant now argues that refusal of the trial court either to compel Collier to testify at the deposition or to exclude his testimony at trial requires reversal. The State contends the motions were properly denied because a rational basis existed for Collier's invocation of the privilege during discovery.

The broad rights of discovery afforded criminal defendants by our Rule 25 have constitutional underpinning rooted in due process. See Rule 25; *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 110 (1976); *State v. Stapleton*, 539 S.W.2d 655, 659 (Mo.App.1976). Discovery is critical for both defense and prosecution. Against this, the importance of the privilege against self–incrimination embodied in the federal constitution's Fifth Amendment and Art. I, § 19, Mo.Const., must be balanced. See *Boyd v. United States*, 116 U.S. 616, 631, 6 S.Ct. 524, 29 L.Ed. 746 (1886); *State v. Faulkner*, 175 Mo. 546, 75 S.W. 116, 135 (1903).

When the discovery rights of a criminal defendant stand at odds to a witness' assertion of the privilege against self–incrimination,[4] courts are charged with resolving such impasse in a manner consonant with the constitutional protections afforded both.[5] Cf. *United States v. Gomez–Rojas*, 507 F.2d 1213, 1220 (5th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). This the trial court did not do.

ing application of a similar New York statute. See *People v. Mandel*, 48 N.Y.2d 952, 425 N.Y. S.2d 63, 401 N.E.2d 185 (1979), *appeal dismissed* and *cert. denied*, 446 U.S. 949, 100 S.Ct. 2913, 64 L.Ed.2d 805 (1980).

**4.** It is generally held that when the Sixth Amendment rights of a criminal defendant to confrontation and compulsory process conflict with the Fifth Amendment privilege of a witness, the witness' Fifth Amendment rights prevail. See for e. g., *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *United States v. Gomez–Rojas*, 507 F.2d 1213, 1220 (5th Cir.), *cert. denied*, 423 U.S.

826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *Myers v. Frye*, 401 F.2d 18, 21 (7th Cir. 1968); *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973); *United States ex rel. Tatman v. Anderson*, 391 F.Supp. 68, 71 (Del.1975); *Matter of J. W. Y.*, 363 A.2d 674, 682–683 (D.C.1976); *State v. McDowell*, 247 N.W.2d 499, 501 (Iowa 1976); *Washington v. Texas*, 388 U.S. 14, 23 n.21, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967).

**5.** See Note, *"The Public Has a Claim to Every Man's Evidence": The Defendant's Constitutional Right to Witness Immunity*, 30 Stan.L. Rev. 1211 (1978).

■ The privilege against self–incrimination is available to a witness in any proceeding, *State ex rel. Pulliam v. Swink*, 514 S.W.2d 559, 560 (Mo. banc 1974), and it is uniformly recognized that if a rational basis exists for invocation of the privilege, the court, unable to find as a matter of law that the testimony will not incriminate, cannot compel the witness to testify. *State v. Joyner*, 571 S.W.2d 776, 779 (Mo.App. 1978); *Cantor v. Saitz*, 562 S.W.2d 774, 778–779 (Mo.App.1978); *State v. Brooks*, 551 S.W.2d 634, 652 n.30 (Mo.App.1977), *cert. denied*, 434 U.S. 1017, 98 S.Ct. 736, 54 L.Ed.2d 763 (1978); *State ex rel. Lee v. Cavanaugh*, 419 S.W.2d 929, 933 (Mo.App. 1967), see *Ex parte Holliway*, 272 Mo. 108, 199 S.W. 412, 416 (1917). The essential inquiry is whether the response would "tend to incriminate by disclosing a fact or facts constituting a link in a chain of evidence sufficient to convict." *State ex rel. Howard v. Allison*, 431 S.W.2d 233, 238 (Mo.App. 1968); *State v. Kaiser*, 534 S.W.2d 19, 21 (Mo. banc 1976).

■ However, the trial court is not required to blindly accept all claims of privilege solely upon the witness' calling the "Fifth Amendment" into play.[6] *Cantor v. Saitz*, 562 S.W.2d 774 at 778. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself–his say–so does not of itself establish the hazard of incrimination." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The court may gauge the propriety of invoking the privilege from the implications of the question or the setting in which it is asked. *Id.* Further, the privilege is not eroded by requiring a witness or his counsel to describe in general terms a rational basis upon which the answer could possibly incriminate. *Cantor v. Saitz*, 562 S.W.2d 774 at 778.

■ On defendant's motion to compel discovery the record indicates the trial court failed to properly appraise the validity of Collier's assertion of the privilege at the deposition. Where as here the claim of privilege by a prosecution witness at a pretrial deposition frustrates the discovery rights of the criminal defendant, the trial court at the very least is obligated to examine the record of the deposition to ascertain if the questions posed have the potential for eliciting incriminating matter. This the trial court by its own admission failed to do and it must be considered error. Further, the trial court should have examined to determine if the witness waived privilege against self–incrimination by his earlier statements. See *Rogers v. United States*, 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951); *State ex rel. Lee v. Cavanaugh*, 419 S.W.2d 929, 935 (Mo.App.1967).

Defendant also urges it was error to deny the motion to exclude Collier's testimony from trial.

Recently this Court in *State v. Brown*, 549 S.W.2d 336 (Mo. banc 1977) and *State v. Carlos*, 549 S.W.2d 330, 334 (Mo. banc 1977), held that if a witness claims the privilege against self–incrimination on cross–examination, whether to strike all or a portion of the witness' testimony on direct examination "must depend upon the discretion of the trial judge exercised in the light of the particular circumstances." *State v. Brown*, 549 S.W.2d 336 at 343.

■ In this context we stated: "[C]ourts must be acutely aware of a defendant's right to confront and cross–examine prosecution witnesses and to not permit that right to be diminished by recalcitrant witnesses who give damaging testimony on direct and then refuse to answer questions on cross which are closely related to the commission of the crime because those rights are constitutionally protected." *Id.* Similarly the right to discovery must be protected, though the sanction of striking all or part of the testimony of the State's witness who asserts the privilege in pretrial deposition but then testifies freely for the

---

6. The dilemma presented by allowing the witness to be the sole judge of the validity of the claim of privilege was analyzed in *Ex parte Holliway*, 272 Mo. 108, 199 S.W. 412, 416 (1917).

state at trial, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances.

■ Apparently the trial judge denied defendant's motion, believing that absent involvement of the prosecutor in Collier's refusal to answer questions at the deposition, the request for exclusion of Collier's testimony at trial must automatically be denied. To be sure, prosecutorial collusion would require strong action, but irrespective of such collusion or motivation, a trial judge retains discretion to avoid unfairness when the State's principal witness refuses to answer questions in discovery proceedings yet testifies at trial without raising the privilege against self–incrimination. The situation peaked during Collier's direct testimony, and when he testified to all matters concerning events following his "arrival at the victim's door" without raising the privilege, the court at the very least should have examined the deposition transcript, made a judgment determination and taken appropriate action. The actions might include striking part or all of the testimony, or declaring a mistrial or recess to permit resumption of the critical discovery previously denied defendant by the unreviewed actions of the witness.

The defendant's right to meaningful discovery was thus unreasonably frustrated without appropriate remedial action by the court. For this reason, the cause must be reversed and remanded.[7]

All concur.

---

7. We doubt whether further discovery proceedings involving Collier will be an issue on retrial. Collier testified extensively at trial under oath and that transcript is part of the record and available to defense counsel.