STATE of Missouri ex rel. JACKSON COUNTY PROSECUTING ATTORNEY, Relator,

v.

The Honorable Kelly MOORHOUSE, Respondent.

No. WD 59632.

Missouri Court of Appeals,
Western District.

Jan. 29, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 5, 2002.

Application for Transfer Denied
April 23, 2002.

Phil A. Levota, Asst. Pros. Atty., Jackson County, for relator.

Joseph Locascio, Kansas City, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

This writ proceeding arises from the refusal of two witnesses endorsed by the State in a criminal proceeding to answer deposition questions posed by the Defendant, Dana Crawford ("Defendant"), who is charged with murder in the first degree and armed criminal action. After the witnesses refused to obey the trial court's order compelling them to answer deposition questions and their refusal to explain their defiance to the court, the Honorable Kelly Moorhouse entered an order striking the State's endorsement of the two witnesses. We then issued a preliminary rule prohibiting the trial court's action which we now make absolute.

 This court may issue a writ of prohibition under three circumstances: "(1) to avoid a usurpation of judicial power because the trial court lacks either personal or subject matter jurisdiction; (2) to remedy a clear excess of jurisdiction or an abuse of discretion such that the lower court lacks the power to act as contemplated; and (3) in limited situations where some 'absolute irreparable harm may come to a litigant if some spirit of justifiable relief is not made available to respond to a trial court's order.'" *State ex rel. Nixon v. Askren*, 27 S.W.3d 834, 835 (Mo.App. 2000) (citing *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 577 (Mo. banc 1994)). We begin with the presumption that the actions taken by the trial judge were proper. *State ex rel. Vanderpool Feed & Supply Co., Inc. v. Sloan*, 628 S.W.2d 414, 416 (Mo.App.1982). Thus, the burden falls upon the State to establish that the trial judge abused her discretion and that prohibition is appropriate. *Id.*

The charges against Defendant were originally filed in June 1996 but were subsequently dismissed due to failure to locate essential witnesses. Those charges were refiled on August 18, 2000. The information filed by the State apparently endorsed Kaplin Pulce ("Pulce") and Jason Clark ("Clark") as witnesses pursuant to Rule 23.01(f). During discovery the State also listed, in its response to Crawford's discovery requests, Pulce and Clark as witnesses the State intended to call at trial. Pulce and Clark had previously given separate statements to police around the time of the murder. The content of those statements is not part of the record before us. Crawford sought to depose these two witnesses who were apparently in federal custody on unrelated charges but in the Jackson County jail pursuant to writs of habeas

corpus ad testificandum. Both Pulce and Clark refused to answer questions at the depositions.

Defendant then filed a motion to compel the testimony of these two witnesses. In the alternative, Defendant requested that the trial court strike the endorsement of the witnesses. The motion to compel was granted, but the witnesses still refused to testify. We have not been provided with the transcripts of the aborted depositions, but there is no suggestion in the record that either witness gave any reason for their refusal and particularly no indication that either witness claimed a privilege against self-incrimination. On February 13, 2001, apparently the same day the case was set for trial, a hearing was held for the purpose of determining the witnesses' intent to comply with the court's order. Pulce refused to be sworn or answer questions at the hearing. Clark was sworn but refused to give audible answers to the questions posed by the court. At the conclusion of the hearing, the respondent granted Defendant's motion to strike the State's endorsements of Pulce and Clark.

The State seeks the issuance of a permanent writ of prohibition barring the respondent from striking the State's endorsement of Pulce and Clark as witnesses. The State argues that the trial court's striking of the endorsements of Pulce and Clark was improper, as it was not "appropriately remedial and invade[d] the province of the prosecutor, to manage its own evidence." The State musters six arguments in support of its allegations of error: (1) the prosecutor's right to guide his or her own case and control the presentation of evidence; (2) the prosecution has not frustrated the Defendant's attempts to depose the witnesses; (3) the Fifth Amendment has not been invoked by the witnesses; (4) the Defendant's Sixth Amendment right to confrontation

has not yet been impeded; (5) the sanction imposed precludes the State from presenting the witnesses' testimony, even if they should later decide to testify; and (6) the remedy granted was inappropriate, as the trial court should have attempted to compel the witnesses to testify through contempt proceedings.

While the State argues that it should be afforded wide berth in controlling the content and presentation of its evidence, a prosecutor's discretion in preparing and presenting its case remains subject to the rules of discovery. Discovery in criminal cases is governed by Rule 25. The Missouri Supreme Court has recognized that Rule 25 is built upon a "constitutional underpinning rooted in due process." *State v. Wilkinson,* 606 S.W.2d 632, 636 (Mo. banc 1980). The case at bar concerns two recalcitrant witnesses who have refused to be deposed by the defendant. Those witnesses have also generally refused to answer questions posed by the trial judge attempting to probe the reasons for their refusal to testify. Indeed, one of those witnesses even refused to be sworn. The ultimate question is whether the trial court abused its discretion in striking the State's endorsement of the two uncooperative witnesses.

A trial court is vested with wide discretion in managing discovery in criminal cases. *See generally State v. Carlisle,* 995 S.W.2d 518, 520 (Mo.App.1999). However, that discretion is not without limit. On the one hand, the trial court's discretion is bounded by the requirement that the trial court avoid fundamental unfairness to the defendant. On the other hand, a trial court's discovery rulings should also be fair to the State. *See State v. Cox,* 542 S.W.2d 40, 50 (Mo.App.1976) (the right to discovery is mutual). Here, the State suggests that the trial court has gone beyond those boundaries and has entered an order

that thwarts the prosecutor's "right to guide its own case and control the presentation of its own evidence." In turn, the Defendant relies upon the principle that discovery in criminal cases is intended "to permit the defendant a decent opportunity to prepare in advance of trial and avoid surprise." *State v. Carlisle*, 995 S.W.2d 518, 521 (Mo.App.1999) (citing *State v. Johnson*, 524 S.W.2d 97, 101 (Mo. banc 1975)).

The parties direct us to no reported Missouri case where a trial court has taken a similar action where witnesses have refused to be deposed by a party in a criminal proceeding. In the extant cases, the issue of the refusal of a witness to testify at a deposition in a criminal case has arisen when the witness later chooses to testify at trial. *See, e.g., State v. Wilkinson*, 606 S.W.2d 632 (Mo. banc 1980). As a result, the issue has been broached only on proceedings subsequent to trial and conviction (direct appeals or motions for post-conviction relief). Thus, the appellate courts have been able to take a retrospective view of the impact of the witness' tardy decision to testify. As such, the reported decisions focus upon determining if the trial court took appropriate remedial actions[1] to ameliorate the effect of the witness' eleventh-hour decision to testify at trial. These decisions also consider whether the defendant had access to other materials (such as prior statements made by the witness) that adequately apprised the defendant of the subject and content of the witness' testimony.

▄▄▄ The State suggests that it should not be penalized for the witness' refusal to give deposition testimony, absent involvement by the State in the witnesses' recalci-

trance. This argument was rejected, however, by the Missouri Supreme Court in *State v. Wilkinson*, 606 S.W.2d at 638. Generally, if a witness refuses to be deposed by a defendant, the trial court has discretion to strike some or all of that witness' trial testimony. *Id.* at 637–38. This case, however, presents the novel issue of whether a trial court may bar the witness from being endorsed by the State, essentially precluding the witness from later testifying at trial if the witness' attitude changes.

▄▄▄ As stated above, the reported cases deal retrospectively with a trial courts' decision during trial to strike or permit witness testimony. Many of these cases examine the basis for the witness' refusal to testify in evaluating whether the trial court's actions were appropriate. The largest subset of those cases concerns a witness' assertion of the Fifth Amendment privilege against self-incrimination. In *Wilkinson*, the State's principal witness was deposed and answered some questions, but, when the inquiry reached the critical events, asserted his privilege against self-incrimination and refused to answer any more questions. The defendant filed motions to compel answers to the questions and after that was denied a pre-trial motion to exclude the witness' testimony at trial which was also denied. At trial the witness testified freely about matters upon which he refused at the deposition. On appeal the defendant argued that the failure to compel the witness to testify at deposition or exclude the testimony at trial required reversal of the conviction. The Supreme Court discussed a number of general principles concerning claims by a witness of Fifth Amendment

---

1. Those actions might consist of striking the witness' testimony, giving the defendant an opportunity to interview or depose the witness prior to his testimony, or offering to declare a mistrial or recess to give the defendant additional time to investigate the information revealed by the witness.

privileges, the defendant's right to discovery, and appropriate remedial action that can be taken by a trial court to balance the rights of the witness and the defendant. When these rights come into conflict, the trial court must resolve the conflict consistently with the protections afforded both. *Wilkinson,* 606 S.W.2d at 636. Nevertheless, the trial court need not blindly accept the assertion of the privilege and may inquire as to whether it has a rational basis or has even been waived. *Id.* at 637–38. Thus, in *Wilkinson,* the trial court was found to have erred in failing at the least to have examined the record of the deposition to see if the questions were, in fact, potentially incriminating. Of course, in the case *sub judice,* the trial court did enter an order compelling answers to the deposition questions. *Wilkinson* also found error by the trial court in failing to take some remedial action when the witness recanted his claim of privilege at trial and testified for the State. *Wilkinson* further instructs that there is no single remedy when the defendant's right to discovery is "unreasonably frustrated." *Id.* at 638. Although "appropriate remedial action" might include striking of the witness' testimony, other less drastic measures might be sufficient in light of the particular circumstances. *Id.* The point is that the trial court must exercise discretion and must do reasonably in light of the facts of the particular case. An abuse of discretion may arise from a failure to reasonably exercise discretion as well as an affirmative act that goes beyond the proper scope of discretion.

The defendant argues that a witness cannot be called by either party to testify at a jury trial solely for the purpose of having the witness invoke the Fifth Amendment, and that the trial court, therefore, acted within its discretion in effectively striking the witnesses prior to trial. *State v. Sidebottom,* 753 S.W.2d 915,

922 (Mo. banc 1988) (citing *State v. Horne,* 691 S.W.2d 402, 404 (Mo.App.1985)). In some circumstances, it has been held that a trial court may properly exclude the witness' testimony. The State argues that the witnesses here have *not* invoked the Fifth Amendment. In addition, the State relies upon *State v. Sidebottom,* for the proposition that if a witness might offer legitimate testimony in addition to invoking the Fifth Amendment regarding other areas of questioning, the witness may still be called to the stand at trial. *Id.*

Clearly, when a witness refuses to testify at deposition on this ground, a trial court is obligated to investigate any Fifth Amendment privilege claim and determine whether the privilege is properly asserted. *Wilkinson,* 606 S.W.2d at 637. The trial court may obtain general statements regarding the general basis for the assertion of privilege, to test whether the assertion is valid. For that purpose, it is not unusual to appoint counsel for a witness, so that the attorney may confer with the witness regarding the claim to the privilege and to assist the court in determining whether the witness is indeed attempting to assert a valid Fifth Amendment privilege claim. *State v. Jackson,* 659 S.W.2d 12, 14 (Mo.App.1983). Here, however, it does not appear that counsel was present for either Pulce or Clark.

Due to the refusal of the witnesses to answer the court's questioning during the hearing, we do not know the reason why the witnesses refused to testify or respond to questioning by the trial court. Indeed, when Pulce was asked if he was attempting to assert the Fifth Amendment, he refused to give a responsive answer. Thus, it cannot be said whether their refusal to testify is grounded in a claim to Fifth Amendment privilege or whether it arises from some other basis. We under-

stand the trial court's frustration with witnesses who refused to even state the reason for their refusal to testify. The trial court believed that it would be improper to call the witnesses at trial to determine if they were invoking their Fifth Amendment privilege or merely being obstinate. Although it might be argued that the trial court's action in striking the endorsement of the witnesses went beyond that permissible to remedy the defendant's frustrated discovery, we need not in this case decide the outer limits of the court's remedial powers and whether absent misconduct by the state, not present here, a trial court may ever strike a witness endorsement.

Here the trial court acted prematurely and excessively to remedy the denial of discovery to the defendant. If the witnesses were to become cooperative at trial, fully or partially, the trial court would have a variety of remedies as discussed in *Wilkinson.* If the witnesses were to continue their obstinacy and refuse even to identify their grounds for refusing to testify, the defendant would suffer no harm to his constitutional rights to discovery and there would simply be no evidence from the two witnesses.[2] By the trial court taking the action it did under these circumstances, the State was foreclosed from any alternatives or response to the witnesses' recalcitrance if it continued at trial. Nor was the trial court's action necessary to protect the defendant's right to discovery, since that right is not prejudicially impinged unless and until the witnesses decide to testify at trial. The action taken by the trial court was not yet necessary and constituted an abuse of its discretion.

The trial court also expressed concern about the defendant's Sixth Amendment right of confrontation. In the present proceedings, the defendant echoes the trial court's concern by suggesting that striking the endorsement of the witnesses was necessary to preserve the defendant's right to confront the witnesses against him. That right is triggered, however, only if the witnesses elect to testify upon direct examination at trial but then refuse to answer further questions on cross-examination. *See State v. Brown,* 547 S.W.2d 217, 219 (Mo.App.1977). If the witnesses refuse to offer any testimony at trial, then the Defendant has no right to confront those witnesses. *Id.* As trial has not been held in the proceedings below, the Sixth Amendment issue has not ripened and does not present an issue at this stage. To the extent that the trial court relied upon the Sixth Amendment right to confrontation as a basis for striking the endorsements of the witnesses, the trial court erroneously applied the law.

This court's preliminary writ of prohibition is therefore made absolute.

EDWIN H. SMITH, Judge, and THOMAS H. NEWTON, Judge, concur.

---

2. We express no opinion as to whether in such circumstances the witnesses would be unavailable and their prior statements admissible under some theory. *See, e.g., State v. Bell,* 950 S.W.2d 482 (Mo. banc 1997) (discussing a residual exception to the hearsay rule. *See also* David A. Johns, Annotation, *Witness' Refusal to Testify on Grounds of Self-Incrimination as Justifying Reception of Evidence of Prior Statements or Admissions,* 43 A.L.R.3d 1413 (1972)).