**Billy COLEMAN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 68014.**

Missouri Court of Appeals,
Western District.

May 13, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 2008.

Mark A. Grothoff, Columbia, MO, for Appellant.

Jamie P. Rasmussen, Jefferson City, MO, for Respondent.

Before: RONALD R. HOLLIGER, P.J., HAROLD L. LOWENSTEIN, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. Billy Coleman appeals the denial of his Rule 29.15 post-conviction relief motion. He claims that trial counsel was ineffective for failing to call witnesses and failing to present evidence of his preexisting injury. We reverse and remand.

### Factual and Procedural Background

On December 19, 2003, police responded to a burglary in progress at the Stanfills' residence, which was located on the corner of the residential street. The neighbor, Ms. Hood, observed through her window a white man wearing a dark jacket, dark stocking cap, and gloves kick in the front door of her neighbor's house and enter it.

She was approximately one hundred and thirty-five feet from the crime scene. A white SUV was parked in the driveway; Ms. Hood did not see a driver in the SUV. A few minutes passed, and another white man wearing a dark jacket, dark stocking cap, and white gloves exited the SUV and entered the house. At this point, Ms. Hood ran to her phone to call the police and reported that the house across the street was being burgled by two white men of which one appeared to be darker than the other, "either very tan or of Mexican descent." The second man returned to the SUV with wrapped Christmas presents in his hands and loaded them into the SUV. The first man remained inside while the second man continued to load presents in the vehicle. Thereafter, the SUV reversed onto the residential street while both men were in the house. It was driving away from the house when the police approached in a patrol car. A chase ensued with the police pursuing the SUV by foot and by vehicle. Ms. Hood observed one of the men run from the back of the house and into the neighborhood before the police arrived. Afterwards, she left the window to tend to her toddler. She testified that from her viewpoint that someone else could have exited the house without her seeing it "if they ran straight out of the back."

Meanwhile an off-duty police officer, Richard Dull, heard the dispatch on his radio. Mr. Dull lived directly behind the Stanfills' residence. His house faced a different street and a privacy fence separated the backyards. Officer Dull grabbed his badge, I.D., and gun and headed outside to his neighbor's yard. He made contact with the officer chasing the SUV by foot, Sergeant Michael Lewark. Sergeant Lewark told him to check the perimeters of the Stanfills' residence. As he walked to the front of the Stanfills' resi-

dence, Officer Dull noticed Mr. Coleman standing on the corner of the Stanfills' yard about twenty to twenty-five feet from the front porch. He told Mr. Coleman to stay put. Mr. Coleman replied that he could not run.

Another off-duty officer noticed Mr. Coleman walking in a diagonal path to the street across the Stanfills' yard. Officer Dull approached that officer and Mr. Coleman did not resist. At some point, Ms. Hood was asked to identify Mr. Coleman as one of the men that she observed breaking into the Stanfills' residence. She could not identify him but stated that his clothes appeared to be consistent with what she observed, yet nothing about him stood out to her as the burglar. Mr. Coleman is a black man who apparently has a light skin complexion. He was arrested and taken to the police station. He was wearing a dark jacket, which had a reversible tan inside and inside his pockets were a black stocking cap, light colored gloves, and a box cutter. His counterparts, the first man who fled and the driver of the SUV, were also arrested.

Mr. Coleman waived his Miranda rights. He denied any participation in the burglary and explained that he was in the neighborhood because he was visiting a woman in the subdivision and was looking for the nearest bus stop. Mr. Coleman was from St. Louis. He refused to sign his statement, a waiver, or any document. Mr. Coleman went to trial before his codefendants were tried in separate proceedings. The State adduced the above evidence, and Mr. Coleman did not present any evidence. Although his defense is not well articulated, it can be characterized as the defense of being at the wrong place at the wrong time. After hearing the evidence, the jury found him guilty of second-degree burgla-

ry, section 569.170.[1]

Mr. Coleman filed a motion for new trial based on several grounds including juror misconduct, which the trial court denied. Mr. Coleman was sentenced to seven years of imprisonment. He appealed, and we affirmed. He filed a timely *pro se* Rule 29.15 post-conviction relief motion, and appointed PCR counsel filed a timely amended Rule 29.15 motion. Mr. Coleman alleged that his trial counsel was ineffective for several reasons including failing to call favorable witnesses and for failing to introduce evidence of his preexisting foot injury.

At the evidentiary hearing, trial counsel, Ms. Holly Griffith; Sergeant Lewark; and Mr. Coleman testified. Depositions of Mr. Gerry Farr and Mr. Joshua Slater, the co-defendants, were admitted into evidence. Additionally, Mr. Slater's trial testimony from Mr. Slater's trial and Mr. Coleman's medical records were introduced into evidence. After hearing all the evidence, the motion court denied relief. Mr. Coleman appeals.

### Standard of Review

We review denials of post-conviction relief motions to determine whether the findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). Thus, we will affirm unless we are left with a firm and definite impression that a mistake has been made after review of the entire record. *Luster v. State*, 10 S.W.3d 205, 209–10 (Mo.App. W.D.2000).

### Legal Analysis

Mr. Coleman raises two points in which he challenges the motion court's ruling that his trial counsel was not ineffective. To prove ineffective assistance of counsel, Mr. Coleman had to show that trial counsel's actions and omissions fell below the level of skill and diligence of a reasonably competent attorney in a similar situation, and that he was prejudiced as a result of the attorney's deficiency. *Id.* at 210. To satisfy the prejudice prong, Mr. Coleman had to show that there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *Id.* A reasonable probability is that which is sufficient to undermine the confidence in the outcome. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). It is presumed that trial counsel's performance is a reflection of sound trial strategy. *Luster*, 10 S.W.3d at 210.

■ In his first point, Mr. Coleman argues that his trial counsel was ineffective because her failure to call favorable witnesses was not reasonable trial strategy because their proffered testimony that they did not know him and that he was not involved in the burglary would have supported his defense that "he was just in the wrong place at the wrong time and was mistakenly caught up in the investigation." And there is a reasonable probability that the outcome would have been different because their testimony would have caused the jurors to question his involvement with the burglary. To succeed on an ineffectiveness claim for failure to call witnesses, Mr. Coleman had to show: (1) "that the witness could be located through reasonable effort"; (2) that the witnesses would have testified if they were called; and (3) "that the testimony would have provided a viable defense." *State v. Meadows*, 785 S.W.2d 635, 643 (Mo.App. E.D.1990).

At the post-conviction relief hearing, trial counsel testified that Mr. Coleman asked her to contact his co-defendants, Mr. Slater and Mr. Farr, to verify that they

---

**1.** All statutory references are to RSMo 2000 unless otherwise indicated.

did not know him and that he was not part of the burglary. Trial counsel stated that she asked the attorneys representing them if they would testify at Mr. Coleman's trial, and both indicated that the co-defendants would invoke their rights against self-incrimination if called. Trial counsel did not subpoena them.

Mr. Coleman adduced deposition testimonies of Mr. Slater and Mr. Farr that no one from Mr. Coleman's defense team contacted them. Mr. Slater stated that he had not discussed with his attorney about testifying for Mr. Coleman. Mr. Farr stated that while his attorney told him the condition of his plea agreement precluded him from testifying for his codefendants, he did not accept that plea offer so he was free to testify at Mr. Coleman's trial. Both stated that had they been subpoenaed, they would have testified that Mr. Coleman was not part of the burglary and that they did not know him. Mr. Slater was tried by jury after Mr. Coleman's trial and testified that he did not know Mr. Coleman and that Mr. Coleman was not part of the burglary. The State did not have a strong case against Mr. Farr, so Mr. Farr pled guilty to burglary and a pending charge. The motion court found that Mr. Coleman told his trial counsel that he did not know his codefendants, and trial counsel consulted with their attorneys to determine if they would testify on Mr. Coleman's behalf. The motion court further found that Mr. Slater's and Mr. Farr's testimonies that they would have testified at Mr. Coleman's trial were unbelievable. It found the attorneys of the codefendants told trial counsel their clients would assert the Fifth if called to testify at Mr. Coleman's trial, so neither Mr. Slater nor Mr. Farr was available to testify. And trial counsel "was not required to attempt to call either of them as a witness to test their lawyers' advice, nor should she have attempted to interview them behind their lawyers' backs." Thus, it concluded that trial counsel's failure to call the witnesses did not constitute ineffectiveness.

■ Mr. Coleman argues that the motion court erred because trial counsel's decision not to pursue the issue further was "neither sound nor reasonable." Mr. Coleman claims that the evidence indicates that Mr. Slater's attorney did not know what Mr. Slater would testify about if called so "it was unreasonable for [trial] counsel not to take additional steps to determine the content of Slater's potential testimony at trial and to call him to testify at appellant's trial." He also claims that trial counsel should have tested Mr. Farr's intentions although Mr. Farr's attorney was not ambiguous about Mr. Farr invoking his right against self-incrimination. Trial counsel has the duty to investigate the evidence and produce the favorable evidence at trial. *Perkins–Bey v. State*, 735 S.W.2d 170, 171 (Mo.App. E.D.1987). Part of that duty is to subpoena uncooperative witnesses who possess knowledge of material facts so that the judge may use his powers of persuasion to get the witness to cooperate. *Id.* Mr. Coleman is arguing that trial counsel has a duty to subpoena codefendants who have indicated that they would invoke their right against self-incrimination if called. Yet, Mr. Coleman does not cite any support for this contention. He merely argues that a reasonably competent attorney would have at least determined the nature of the testimony before ceasing investigation.

■ For us to find in Mr. Coleman's favor, we would have to believe Mr. Slater's and Mr. Farr's testimony that they would have testified, which we cannot do. "The motion court is not required to believe the testimony of a movant or any other witness at an evidentiary hearing even if [it is not contradicted], and an

appellate court must defer to the motion court's determination of credibility." *Proctor v. State* 809 S.W.2d 32, 36 (Mo. App. W.D.1991); *see also Francis v. State*, 183 S.W.3d 288, 302 (Mo.App. W.D.2005). Because the motion court did not believe Mr. Slater or Mr. Farr, Mr. Coleman failed to show that the witnesses would have testified. Thus, the trial court did not clearly err in finding against ineffective assistance of trial counsel for failing to call Mr. Coleman's codefendants. We note that testimony from Mr. Farr and Mr. Slater that they did not know Mr. Coleman would not have violated their rights against self-incrimination.[2]

 In his second point, Mr. Coleman argues that his trial counsel was ineffective because her failure to adduce evidence about his preexisting injury was not reasonable trial strategy because the evidence would have negated the adverse inference that he "could not" run because he injured his foot while kicking in the door. He asserts that there is a reasonable probability that the outcome would have been different had such evidence been presented to the jury. Trial counsel is given great discretion in which evidence to present to the jury. *Matthews v. State*, 175 S.W.3d 110, 116 (Mo. banc 2005). If a decision to forego the presentation of evidence is based on reasonable trial strategy, then it cannot support the finding of ineffectiveness. *Francis*, 183 S.W.3d at 300. Reasonableness is evaluated in the light of the circumstances of the case, defense, and trial happenings. *See id.* at 300–01. (finding actions of prosecutor at trial justified a change in defense strategy so that trial

counsel was not ineffective for changing strategy).

The motion court found that trial counsel did not adduce any evidence about Mr. Coleman's preexisting injuries and medical treatment to his legs, although the evidence was available to her and admissible. It also found that there were no allegations that Mr. Coleman was the one who kicked the door, and emphasizing his leg injury would have informed the jury that he could not run even if he wanted to do so. She intended to argue that the burglars fled the scene, but the innocent visitor to the neighborhood, Mr. Coleman, had no reason to run. She believed that presenting the medical evidence would lessen the legitimacy of his presence in the neighborhood. The motion court found that her decision not to present the evidence was, therefore, based on reasonable trial strategy.

Mr. Coleman argues that trial counsel's decision was not based on reasonable trial strategy because Officer Dull testified that Mr. Coleman could not run, which supported the inference that he "did not" run because he "could not" run rather than because he was innocent. Mr. Coleman claims that once the cat was out the bag, trial counsel had the duty to present medical records of Mr. Coleman's preexisting leg injury to negate the inference that he injured himself while kicking in the door.

At the evidentiary hearing, trial counsel testified that she did not present the evidence, although Officer Dull stated that Mr. Coleman "could not" run, because the jury could have interpreted it as he "did

**2.** " 'The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination.' " *State v. Wilkinson*, 606 S.W.2d 632, 637 (Mo. banc 1980) (citation omitted). *Wilkinson* involved a codefendant invoking self-incrimination privilege when the defendant tried to depose him about events (the rape) occurring inside the victim's apartment after he already answered questions concerning the events (the planning) occurring prior to entering the apartment.

not" run. Trial counsel specifically asked Officer Dull on cross-examination at trial whether Mr. Coleman tried to run. Officer Dull replied, "He said he couldn't run." Trial counsel then asked, "But he didn't even, I mean, he didn't try?" Officer Dull replied, "No. He didn't try."

Trial counsel should have known that the jury could infer that Mr. Coleman "did not" run because he "could not" run. This inference would lead the jury to question why Mr. Coleman "could not" run, and trial counsel did not provide an available answer. Trial counsel knew about the injury and should have known that Officer Dull knew about the preexisting injury, since he testified in his deposition that Mr. Coleman told him he could not run because he had an air brace on his ankle.

Because the prosecutor presented evidence of the burglary without identifying the codefendant as the one who kicked in the door, the jury was left to consider the evidence from which it could reasonably infer that Mr. Coleman's foot was injured from kicking in the door and the resulting injury prevented him from running. Moreover, in the closing argument, the State invited the jurors to consider Mr. Coleman as the kicker and the loader by arguing that "[t]hey kicked [the door] right off the hinges, and both men went in" and "[t]he two men who went inside came out once with presents to throw in the SUV and went back." A reasonably competent attorney would have foreseen the reasonable adverse inferences and would have changed trial strategy to negate them.

Offering evidence that Mr. Coleman "could not" run because of his preexisting injury would have negated the inferences that he injured himself during the burglary while kicking in the door and thus "could not" run. In addition, Ms. Hood testified that the second man "ran" into

the house and within a few seconds returned with presents in his hand, threw them in the SUV, and reentered the house. Evidence that Mr. Coleman could not run, if believed, would have supported an inference that Mr. Coleman was not the second burglar because he could not run. Ms. Griffith's failure to address the reason Mr. Coleman could not run was an act of ineffective assistance. The motion court erred in not finding trial counsel's omission deficient.

Next, we must address whether the deficient performance prejudiced Mr. Coleman. The State argues that if the jury would have known of the preexisting injury, it would have attributed the kicking to a codefendant and still adjudge Mr. Coleman guilty. According to the State, the jury would have concluded that Mr. Coleman "did not" run because of the prior injury and not as an innocent citizen waiting for a bus. The State ignores Officer Dull's testimony that Mr. Coleman could not run and that he probably did not try to run because he lacked the ability. The State implicitly concedes that the inference he could not run because he was injured would be prejudicial to Mr. Coleman, which is exactly the inference that Officer Dull's testimony supports.

██ Thus, the question is whether admitting the evidence of the preexisting injury undermines the confidence in the outcome. Assuming the evidence was admitted, the jury would exclude Mr. Coleman as the kicker, and could conclude he was not the second burglar, whom Ms. Hood had testified "ran into house." Moreover, we are cognizant that the jury could have convicted Mr. Coleman because it disbelieved his story about catching a bus. Yet, we are not confident that the jurors would have convicted Mr. Coleman had they known that a preexisting injury, supported by medical records, pre-

vented him from running. The jury could disbelieve his reason for being in the neighborhood and conclude that he was there for an illegitimate reason but still decide that his physical injury made him less likely to commit the burglary coupled with evidence that the codefendants did not know Mr. Coleman, a man from St. Louis. The evidence against Mr. Coleman was not overwhelming, so a reasonable probability exists that the outcome would have been different but for trial counsel's deficient performance.

## Conclusion

For the foregoing reasons, we reverse the motion court's ruling and grant Mr. Coleman a new trial.

RONALD R. HOLLIGER, P.J. and HAROLD L. LOWENSTEIN, J. concur.